Good morning. You may please the court. My name is Palmer Hoovestall. I'm an attorney from Helena, Montana, and I represent the appellant Robert War Club. I would like to use ten minutes in my initial argument and reserve five for rebuttal. And the issue that I'd like to talk about this morning is what we contend is error by the district court relating to the evidence that it did not allow a woman named Janie Anderson to talk about. And I'll start with a little bit of an argument that I made to the jury at the end of the case. And that is that Winston Churchill once stated that a democracy is the worst form of government except for all the rest that have been tried. And the reason is because a jury trial is the essence of a democratic form of government. And it's embodied in the Sixth Amendment to the United States Constitution, subsumed within due process, and it is fundamental. It is the purest form of government of the people, by the people, and for the people. But it only works if the jury is given the appropriate tools by the district court within which to make their decision. And here, in this case, it's our contention that the district court did not give the jury the appropriate tools. Those tools, of course, are evidence and law. What did the district court do that offended the jury process? In terms of evidence, well, in terms of law, the jury instruction that the district court did not give to the jury prevented the defense from presenting its argument that this individual, Al Linville, had the intent and the motive to kill the decedent, Richard Green. So it's our contention that the jury instruction, the law that was given to the jury, was incorrect. As to the evidence, the jury was not permitted to hear evidence that Mr. Green had the capacity and the ability to kill. Rather, Mr. Linville had the capacity and the ability to kill Mr. Green. And then finally, as to the subpoena and the district court's comments regarding the subpoena pertaining to the phone records, Mr. Warclub was not permitted to provide evidence that, well, he was permitted to provide it, but it was refuted by the district court erroneously when he made a comment about the subpoena. In other words, that went directly to Mr. Linville's concession or circumstantial evidence admission that he did, in fact, kill Mr. Linville. Maybe I'm missing how this played out. You put Mr. Linville on the stand, and he denied never making any of these things. Correct. You call, was it Ms. Anderson, is that her name? Jania, yes. And she contradicts and says that he said X, Y, and Z. And so that's admitted for impeachment purposes. That's the way the judge handled it. So what prevented you from then arguing to the jury? The ladies and gentlemen, Mr. Linfield lied, and there's only one reason you can infer he lied, which is that he did it. That was a perfectly, there's nothing in the judge's instructions that precluded that argument, was there? Well, the instruction that was objected to was the prior and consistent statement of instruction. And the particular part within that instruction was the statement that, members of the jury, this evidence can never be construed to be proof of the matter asserted. It's truth of the matter asserted, in other words. And we objected to that because we, in fact, wanted to argue that these statements, members of the jury, are proof that Mr. Linville first had the intent and the motive to kill Mr. Green, and then, secondly, he, in fact, did. But my point is what, there's nothing in that instruction that would prevent you from making that argument, not based on her testimony, but based on his, the inference from his allegedly false denials. So it seems to me, assuming arguendo, that it was an accurate instruction, and I'm not at all sure about that, it's harmless error. Well, Your Honor, if there was a statement in, from defense counsel's point of view, if there's a statement in the record by the court to the jury that they can never consider this evidence as proof of truth of the matter asserted, i.e., that I'm going to kill him, intent evidence, and I'm going to kill him because we have this beef as to our property, as to this shop, proof of motive, then I think that as defense counsel, to stay within the record and within the court's instructions to the jury, I'm prohibited from making that argument. Mr. Lewisdall, I assume the court instructed the jury to follow his instructions, right? Right. So if he told them you can't consider this impeachment evidence for truth, as I understand your argument, you're saying, therefore, you couldn't argue, you couldn't really make the argument that they should. That's exactly correct, Your Honor. That's exactly correct. And if that language had not been in the instruction, then I could have made that argument. And of course, as the court knows, evidence provides or serves different purposes. For example, in this case, the evidence was impeachment evidence in the form of prior inconsistent statements. But it was also evidence that should have come under the then-existing state-of-mind exception. And it could have been admissible and it should have been admissible under either exception. Had the court not included in the instruction that language that we objected to then defense counsel, I could have argued to the members of the jury exactly what Your Honor is arguing or asking me about. In other words, I could have said, members of the jury, this is evidence of Mr. Linville's intent to kill. This is evidence of motive to kill. The statement that it was held appropriate to impeach was what exactly?  If this was held to be appropriately admitted but limited to impeachment, can you just help me again? What is the statement that was being impeached? Yes, Your Honor. What is it, his prior inconsistent statement? It must be Linville's testimony, right? Right. Yes, it's his testimony that first, during the preceding months, February, March, and in April of 2006, he made statements to Janie Anderson, I'm going to kill Richard Green, Dick Green, I'm going to kill him. He made those statements on a number of times over the telephone. And then there were other statements to the effect that I'm really mad at him because we have this shop and he's going to try to take away my shop because I can't afford to pay the bills. You know, those sorts of things, those are in the record. I urge the Court to look at as well Document 126 that's not in the… I don't think the because part would come in under 803 in any event. The fact that he was angry comes in but not his recollection of what the facts were that led him to be angry. I think that's expressly excluded by the rule. Well, maybe that rule, but under the prior inconsistent statement, if my recollection is correct… Yeah, it would come in for impeachment purposes. Correct. But you're complaining not about that. You're complaining that it couldn't be used by you for other things. So I understand your argument about I'm angry with him. I understand your argument about I plan to kill him. I don't understand the argument as after he says he's angry because of some past event. I think that's expressly excluded by the rule. Well, it could come under the 807 residual exception. Now, did you notice that before trial? You know, Your Honor, we submitted the statement of Ms. Anderson. The district court ordered a pretrial hearing where she testified to these facts. So we did provide that notice to the government. The government did have the ability… You know, you have to note, in my understanding of 807, is you have to say, we are claiming this comes in under the residual exception, and I take it you didn't do that. There is no document that says that. The district court didn't require briefing. The government didn't file a motion in limine as a consequence. That was not done. I think the rule says that the obligation is on you. Perhaps. But as a de facto matter, the government was provided with that notice. They had the opportunity to cross-examine. They sat in the court when she testified on direct, and they had notice of it as a de facto matter. So I see my five minutes or my ten minutes are up, and I'll look forward to being back. Okay. Got about five minutes for rebuttal. Good morning, Your Honors. My name is Leif Johnson for the United States. Judge Rakoff, I want to pick up where you left off on this harmlessness issue. Clearly, the point you raised and we raised in our brief is out there. I don't think it mattered either way with this instruction, because the jury really had to believe one way or the other whether Al Linville said these things, and if he did say those things, then he was likely the murderer or he was involved in the murder. There is an even larger issue than that, Your Honor, and it's this. War Club got exactly what he needed out of Jeanne Anderson's testimony. I mean, it comes across in the closing arguments. What he needed was a statement by the neighbor that he had something of a motive. He had expressed his intent to kill his neighbor. He had gone there at night. He had seen the body. He knew the condition of the body before it was discovered, and he reported it, and that story was reported to the FBI, and the FBI did nothing, and that in itself, Your Honors, is a very potent defense. That's the defense that was raised at the conclusion of this trial, that in fact there was a credible story from a murderer that was reported to the FBI, and they did nothing. They didn't even investigate it. They didn't do anything. If the jury had believed Jeanne Anderson's testimony, we wouldn't be standing here today. Everybody would have said, well, why didn't the government go and investigate this murder from this credible source? I think you're adversary is suggesting that the fact that in his final instructions, the judge put this limitation was a signal to the jury to cabin the use of her testimony in a way that hurt his making the kinds of arguments. He still made the arguments or could have made the arguments, but it had a spillover prejudicial effect, and that it was erroneous because at least some of this evidence could have come in for its truth under the 803 exception. And, Your Honor, our response to that is several fold. Number one, the case law out there, and I refer to the Buffalo case, indicates that the instruction was appropriate. Number two, I mean, obviously, if he had a basis for bringing in testimony as substantive evidence under 803 sub 3, which he argued at the conclusion of the instructions, he didn't bring it up when the issue was live, when the witness was bringing the testimony in, and he never raised the 807 issue at all. So, you know, the court had all, I mean, that water had already passed under the bridge. The court had given his instruction on the appropriate impeachment instruction, which the case law suggests. When the evidence was first presented, when she was on the stand, did the court give a limiting instruction at that time or only in the final instructions? The court gave a limiting instruction in the middle of her testimony as soon as Mr. Hubestall started asking about the prior inconsistency. And he did not at that time raise the 803 exception? That's correct. So you're saying, in effect, he waived it. That is what we're saying, because at that point, I mean, it was waived at jury instructions, but how do you go back and put that genie back in the bottle? And again, the larger issue here is he essentially aborted Janie Anderson because of the way it turned out. It didn't turn out well for her testimony, but he got in what he needed to get in, which was that the FBI ignored a credible lead to a possible source of this murder and that the government was unreasonably pursuing his client. The jury clearly didn't believe that, and for a number of reasons that you can gather from the record. But by the time instructions were being settled by the court, you know, that water was already under the bridge and the die was cast. I mean, she had absolutely no credibility at that point, so there was really no point in taking it further. As to the subpoena issue that's raised in the briefs, I think, and I hope the court will conclude that it's pretty much a non-issue. The court read the subpoena into the record and summarized it in a way that I think was actually factually accurate. As to the juror issue, we think that the court handled that absolutely appropriately given the circumstances and the strange nature of the way that that all transpired. And then finally there was an issue regarding whether or not the court's limiting instruction on cross-examination of Alyssa Sharp with a prior abuse allegation by her father. I think the court was well within its discretion there. But if the court has any further questions about the Janie Anderson testimony, I really do think that that's, you know, obviously where all of the controversy turns in this case. And our larger position is it was harmless and it wasn't preserved at trial and this court ought to affirm. If the court has no further questions, I'll sit down. I don't see questions further, so you can rest your argument. Mr. Hoekstra. Thank you, Your Honor. You have a lot of time left. Yes. So you can take it all or whatever you like. I guess the first thing in response that I would say is that we don't know what the jury believed. There's no evidence of what the jury believed. There probably wouldn't be admissible evidence if we knew what the jury believed in any event. We know that he was convicted. And the reason I brought this tool analogy up was because they weren't, that is the jury was not provided with the necessary tool by the district court. This matter was not waived by trial counsel, by me. I brought it up at the closing when we were settling jury instructions. No, but I don't understand it. The judge gives a limiting instruction at the time. You don't raise the 803 point at that time. So your adversary, as part of his strategy, figures, all right, this is just coming in for impeachment purposes. I don't have to worry about it the same way I might if it was coming in for all purposes because the only claim is that it's for impeachment purposes. Then you get down to closing, you know, to the instructions to the jury, and now you're saying, Judge, tell them it comes in for all purposes. That's sandbagging your adversary. And why isn't that a classic reason to say it was waivered? Your Honor, I don't think that it was sandbagging the adversary. Again, we had a pretrial hearing. We noticed to the government that it was going to be used as proof of intent to kill, proof of motive. That was provided in the pretrial notice.  Members of the jury, we're going to have this woman on the witness stand. She's going to testify to statements that this man made to prove that he, in fact, did kill Richard Green. I don't think that at the time that the district judge provided the prior and consistent statement, cautionary instruction to them, I was under any obligation to say, Your Honor, we also think that this comes in under 803. I think it was at the closing, at the settlement of jury instructions, that we made the appropriate argument, and I don't think that it was waived. You objected to the limiting instruction, right? Pardon me? You objected to the limiting instruction, didn't you? During the settlement of jury instructions. Right. However, when the witness, when the district judge provided that limiting instruction, there was no objection. They did not, which is probably going to be the case. Who offered the limiting instruction? Nobody did. The district judge did. The district court did. On its own. So, Your Honor, if I could get back to the notice requirement. When I sat down, I had a chance to read the statute, or the 807. And 807 simply states that the proponent of the statement is only required to give reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet. Well, while the case law on this is not totally consistent, I think there is a substantial case law that says you have to say you're obviously you give notice before trial of many, many things that you're planning to offer, and you think that they may be coming in under some other provision, as you thought here. But if you want to invoke 807 as an alternative ground, then you need, at least according to some cases, to say, I'm also offering this under 807, because 807 is a very special kind of rule. It requires all sorts of briefing in the normal case. So that's at least the issue I wanted to flag for you. Well, with my 30 seconds left, I'll say that CJA counsel, we come here quite a bit, at least from Montana. I know I've argued before, Your Honors, and I'd similarly like to welcome you to the Ninth Circuit. Thank you. Thank you. Thank you. We appreciate both counsel coming from Montana. We always have excellent lawyers from Montana, and it's one of the pleasures of our circuit. Thanks. How many cases? Mary, do you want to break, or do you want to wait? It's up to you. I think we just have Loomis. That's the only one left. I think unless Judge Rakoff or Judge Schroeder want to break.
judges: Rakoff, Schroeder, Gould